**TAI YANG METAL INDUSTRIAL CO., LTD., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 88–05–00374.**

United States Court of International Trade.

April 24, 1989.

Davis Wright & Jones, David Simon, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Dir., Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Jeanne E. Davidson, Tina M. Stikas, Atty. Advisor, Office of the Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., of counsel, for defendant.

## OPINION

TSOUCALAS, Judge:

Plaintiff Tai Yang Metal Industrial Co., Ltd. (Tai Yang) challenges the first final review determination of the Department of Commerce, International Trade Administration (Commerce), in *Malleable Cast–Iron Pipe Fittings, Other Than Grooved, From Taiwan*, 53 Fed.Reg. 16,179 (May 5, 1988). Two main issues are in contention: (1) whether Commerce's refusal to postpone issuance of a review determination pending a judicial opinion on a challenge to the underlying less than fair value (LTFV) determination is an error of law or an abuse of discretion; (2) whether, for purposes of making the review determination, it was unlawful for Commerce to use the antidumping duty margin found for plaintiff in the underlying LTFV investigation as the best information available.

### Background

Plaintiff is a foreign manufacturer and exporter of malleable cast-iron pipe fittings from Taiwan. Commerce found an antidumping duty margin of 37.09 percent against plaintiff in the original LTFV investigation. 51 Fed.Reg. 18,918 (May 23, 1986). Plaintiff challenged this determination, alleging but for errors in Commerce's use of averaging methodology and in Commerce's comparison of United States price to an average home market price, the dumping margin would have been lower. During the pendency of this action, plaintiff's sole United States importer requested an administrative review of entries for the first review period.

Commerce initiated the review in accordance with 19 U.S.C. § 1675 (1982 & Supp. V 1987) and served the questionnaire on plaintiff. Plaintiff failed to supply any information, explaining that "[t]he company lacks the resources to repeat the gargantuan effort of the fair-value investigation for an investigation period some three times larger than that in the original case." *Tai Yang's Brief in Support of Motion for Judgment Upon Agency Record*, Exhibit C at 2 (*Plaintiff's Brief*). Commerce warned plaintiff that failure to respond to the questionnaire may result in adoption of the antidumping duty margin established in the challenged LTFV determination. *Id.* at 3.

In view of plaintiff's failure to furnish any data on entries that would have been the subject of the review, Commerce used, as the best information otherwise available pursuant to 19 U.S.C. § 1677e(b) (1982), the 37.09 percent antidumping duty margin imposed on plaintiff from the underlying LTFV investigation. In adopting this margin, Commerce referred to the antidumping duty order published in the Federal Register on May 23, 1986 (51 Fed.Reg. 18,918), without reexamining the record in the original dumping determination.

When the final determination in the first administrative review was published on May 5, 1988 (53 Fed.Reg. 16,179), a decision had not yet been rendered in the action challenging the LTFV determination.

Presently before the Court is plaintiff's challenge to the results of the first administrative review. Several points need to be highlighted. The record before the Court is devoid of specific data on entries which were the subject of the LTFV investigation, as well as on those entries which would have been the subject of the review. In light of the sparseness of record on which the Court must base its decision, plaintiff previously made a motion to consolidate the original and the present actions. Consolidation would have permitted plaintiff to revive the claims raised in the initial litigation. This motion was denied

on September 21, 1988 on the grounds that the publication of the final review determination caused the issues in the original suit to become moot.

Plaintiff now urges the Court to rule that the statutory scheme under 19 U.S.C. § 1516a (1982) directs Commerce to stay publication of the review results until the judicial outcome in the challenged LTFV determination. Alternatively, plaintiff argues that this statute obliges Commerce to reassess the challenged determination during review, thereby incorporating the record from the LTFV investigation into the record in the administrative review. Plaintiff contends one of these two courses of action, both of which lead to judicial review of the underlying LTFV determination, is necessary for purposes of lawful assessment of duties on the subject merchandise. The Court will address each of these claims after a brief discussion of the appropriate standard of review.

*Discussion*

I. Standard of Review

Commerce's actions must be upheld unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982). Extensive legislative trust in the administering authority's expertise means that any judicial review of agency determination is a limited one. The reviewing court must give "tremendous deference" to the findings of the agency charged with making determinations under our trade laws. *Alberta Pork Producers' Marketing Bd. v. United States,* 11 CIT ——, 669 F.Supp. 445, 449 (1987) (citing *Smith–Corona Group v. United States,* 713 F.2d 1568, 1571 (Fed.Cir.1983); *Carlisle Tire & Rubber Co. v. United States,* 9 CIT 520, 524, 622 F.Supp. 1071, 1075 (1985)). Accordingly, the Court will not displace a decision of Commerce which is reasonable under the circumstances of this case.

II. Staying the Review Proceeding

█ Plaintiff first argues that postponing the publication of the review determina-

tion is within the scope of Commerce's discretionary authority, and that 19 U.S.C. § 1516a requires Commerce to exercise this power. Defendant counters that Commerce does not possess any authority to delay completion of an administrative review because 19 U.S.C. § 1675 directs Commerce to complete administrative reviews within the statutory period of twelve months. In the alternative, defendant argues Commerce's actions are reasonable because judicial opinion on the challenged LTFV determination would not be dispositive with regard to entries presently under the administrative review.

In 1984 Congress amended 19 U.S.C. § 1675(a)(1) to make annual reviews optional, rather than mandatory. This provision now provides that Commerce will conduct an administrative review "if a request for such a review" is made. Notwithstanding this change, the language that a review, if undertaken, will take place during a "12–month period" was retained. *Id.* The caselaw teaches that statutory time limits in general are directory, rather than mandatory, when the administering authority is not explicitly prohibited from exceeding the time period and "no adverse consequences are imposed for the delay." *Philipp Bros., Inc. v. United States,* 10 CIT 76, 82, 630 F.Supp. 1317, 1323 (1986); *see American Permac, Inc. v. United States,* 10 CIT 535, 539, 642 F.Supp. 1187, 1191 (1986). Defendant does not claim that the statute in question either restricts Commerce from acting beyond the twelve-month period or prescribes adverse consequences for the delay. Indeed, Commerce has deferred completion of reviews on several occasions, attesting to Commerce's discretionary power in this area.

Contrary to plaintiff's argument, however, juxtaposition of discretionary authority under 19 U.S.C. § 1675(a)(1) with 19 U.S.C. § 1516a(c) does not compel Commerce to suspend publication of the completed review. 19 U.S.C. § 1516a(c), titled "Liquidation of entries," states that *unless enjoined,* the entries subject to a determination of Commerce will be liquidated, or finally assessed with actual dumping

duties, consistent with the determination. *See Silver Reed America, Inc. v. United States,* 9 CIT 221 (1985). Plaintiff reads this provision to mean that the entries which are enjoined while the original LTFV determination is being judicially reviewed "shall be liquidated in accordance with the outcome of the appeal on the merits." *Plaintiff's Brief* at 5. The Court finds that such construction does not apply to the present case.

In interpreting 19 U.S.C. § 1516a(c), plaintiff rests its case on the different conclusions reached in *Fundicao Tupy S.A. v. United States,* 11 CIT ——, 669 F.Supp. 437 (1987) and *Oki Elec. Indus. Co. v. United States,* 11 CIT ——, 669 F.Supp. 480 (1987).[1] *Fundicao Tupy* establishes a request for a review as a prerequisite to injunctive remedy pursuant to 19 U.S.C. § 1516a(c), whereas *Oki* obviates a request for a review prior to granting motion for injunctive relief. Plaintiff claims a request for an administrative review was made to avoid any adverse consequence that plaintiff may experience, although it believed that *Oki* should govern this case. *See Plaintiff's Brief* at 16; *Id.,* Exhibit C at 2.

The divided authority in the Court may not be relied on to explain plaintiff's position, however, because plaintiff never applied for an injunctive remedy. Even as to *Oki,* a motion for injunctive relief is a necessary and indispensable requirement for obtaining liquidation consistent with judicial disposition of the LTFV determination. Plaintiff's course of action is thus deficient for purposes of benefitting from the *Oki* rationale.

To the extent plaintiff requested a review, the results of the review will govern liquidation because publication of the administrative review prior to the court's issuance of a decision on the challenged underlying LTFV determination renders those issues moot. *PPG Industries, Inc. v. United States,* 11 CIT ——, 660 F.Supp. 965 (1987). The LTFV determination generally covers entries made from a period prior to the filing of the petition to one month thereafter, whereas the first review period typically covers entries made from the date of the preliminary affirmative determination to the publication of the antidumping duty order. 19 C.F.R. § 353.53a(b)(2) (1988).[2] Principally for this reason,[3] the results of a review determination, grounded on more recent entries, supersede the underlying LTFV determination. *See Silver Reed America,* 9 CIT at 224; *see also Fabricas El Carmen, S.A. v. United States,* 12 CIT ——, 680 F.Supp. 1577 (Feb. 17, 1988); *Agrexco Agricultural Export Co. v. United States,* 12 CIT ——, slip op. 88–52, 1988 WL 43902 (May 4, 1988); and *Alhambra Foundry v. United States,* 10 CIT 330, 635 F.Supp. 1475 (1986).

An exception exists if the Court finds, prior to the publication of the review, that

---

**1.** *NTN Bearing Corp. of America v. United States,* 12 CIT ——, 701 F.Supp. 226 (1988), *appeal docketed,* No. 89–1121 (Fed.Cir. Nov. 30, 1988), follows the rationale articulated in *Fundicao Tupy,* whereas *Ipsco, Inc. v. United States,* 12 CIT ——, 692 F.Supp. 1368 (1988), and *Sonco Steel Tube Div. v. United States,* 12 CIT ——, 698 F.Supp. 927 (1988) adopt the *Oki* reasoning. The Court's bifurcated authority on this matter is currently the subject of appeal in the Court of Appeals for the Federal Circuit.

**2.** The original dumping margin of 37.09 percent was based upon an investigation of plaintiff's entries during the period February 1, 1985 through July 31, 1985. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record* at 6, n. 2. The review, on the other hand, covered the period January 14, 1986 through April 30, 1987. 53 Fed.Reg. at 16,180.

**3.** Under the governing statutes, publication of an antidumping order pursuant to an affirmative LTFV determination only establishes the amount of estimated dumping duties importers must deposit on entries pending liquidation. Such duty deposits must be retrospectively made from the publication of the preliminary affirmative determination, marking the point at which liquidation is suspended, and prospectively on all future entries. *See* 19 U.S.C. §§ 1673b(d), 1673e, and 1673f (1982). Ascertainment of the accuracy of the estimated duties for purposes of actual assessment of duty occurs during review of the antidumping determination and order. *See* 19 U.S.C. § 1675(a). Liquidation is conducted pursuant to this proceeding.

In the event a request for a review is not made, the entries which would have been the subject of the review are liquidated consistent with the original antidumping duty order. *See* 19 C.F.R. § 353.53a(d)(1) (1988).

the underlying antidumping duty order itself is invalid or that the dumping margin is *de minimus*. Even under this narrowly circumscribed exception, however, Commerce is not prevented from publishing the review results, since the outcome and timing of the final decision of the Court is indeterminative as of the time of the publication of the review. In the event the Court finds a *de minimus* dumping margin or that the duty order is invalid, plaintiff will not have suffered adverse consequences as a result of publication of the review. Where the Court affirms the LTFV determination of Commerce, a plaintiff dissatisfied with the results of the review retains an opportunity to challenge it in a separate action, whose scope is limited to the administrative record before the agency at the time of that determination. *Id.; Beker Indus. Corp. v. United States,* 7 CIT 313, 1984 WL 3727 (1984); S.Rep. No. 96–249, 96th Cong., 1st Sess. 247–52 (1979), *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 633–38. For the foregoing reasons, Commerce was not obliged to adjourn the publication of the review determination.

III. Record in Review Determination

A. Best Information Available

■ The second contention pertains to Commerce's use of the dumping margins from the underlying LTFV investigation as the best information available for review determination. Plaintiff complains it was unreasonable for Commerce to rely on these figures without contemporaneously incorporating into the record in review the information from the LTFV investigation. Commerce counters its actions are consistent with 19 U.S.C. § 1677e(b) and the agency's general policy.

19 U.S.C. § 1677e(b) provides:

(b) Determinations to be made on best information available

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses *or is unable to produce information requested* in a timely manner and in the form

required, or otherwise significantly impedes an investigation, use the best information otherwise available. (Emphasis provided).

This provision confers broad authority upon Commerce to use the "best information otherwise available rule" to facilitate timely completion of administrative proceedings. *See Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556 (Fed.Cir. 1984). Additionally, "Commerce may exercise discretion in determining what is the best information available when an exporter or manufacturer has failed to supply requested information." *Chemical Prods. Corp. v. United States,* 10 CIT 626, 634, 645 F.Supp. 289, 295 (1986).

When respondents are unwilling or unable to participate fully in a review, Commerce's policy is to utilize margins from the most recently determined duty rate as the best information available, without reexamining the accompanying record. *See, e.g., Final Results of Antidumping Duty Administrative Review; Steel Jacks from Canada,* 52 Fed.Reg. 32,957 (Sept. 1, 1987); *Bicycle Tires and Tubes from Taiwan; Final Results of Antidumping Duty Administrative Review,* 51 Fed.Reg. 43,752 (Dec. 4, 1986).

It is not controverted that Commerce lacked specific information on the entries that were subject to review because plaintiff did not submit *any data* concerning these entries. Plaintiff belatedly communicated that it "was unable to respond to the questionnaire because it lacked the manpower to assemble the information." *Plaintiff's Brief* at 3. Plaintiff does not appear to dispute the validity of Commerce's policy in question, but rather attempts to except itself with the argument that application of such policy is unreasonable when poor financial health is the cause of unresponsiveness.

While budgetary constraint may in fact underlie plaintiff's lack of cooperation in the review, this cannot form an exception to "the best information available rule." The overriding purpose of this broadly enunciated rule is to alleviate the burden on Commerce to meet statutory deadlines.

This objective would be significantly impeded with accommodation of every individualized demand that respondents raise.[4] Therefore, it was reasonable for Commerce to use the margins from the LTFV determination.

## B. 19 U.S.C. § 1516a(c)

■ Plaintiff alternatively justifies its non-participation in the review on the grounds that 19 U.S.C. § 1516a(c) "does not envision that the appellant-exporter (or appellant-importer) will have to create a new record in the [administrative] review in order to obtain liquidation in accordance with the court's decision" in the challenged LTFV determination. *Plaintiff's Brief* at 19. This theory is statutorily infirm.

To the extent plaintiff failed to apply for injunctive relief, rehabilitating 19 U.S.C. § 1516a(c) in this fashion is manifestly erroneous. Under these facts, if judgment in favor of defendant leads to liquidation consistent with the review determination, which is effectively identical to the LTFV determination, it is a foreseeable and avoidable consequence of plaintiff's own failure to adequately safeguard its rights.

### Conclusion

Upon review of the administrative record, the Court finds Commerce acted reasonably and within the bounds of its discretion in declining to stay the publication of final results in the first review determination. The Court further concludes it was reasonable for Commerce to rely upon the published margin from the LTFV investigation as the best information available, without reassessing the record therefrom. Accordingly, plaintiff's motion

for judgment upon the agency record is denied, and the action is dismissed.

SO ORDERED.

---

**4.** The Court does not perceive a need to rely on the additional grounds upon which Commerce urges dismissal. Commerce explains plaintiff itself could have incorporated into the review record the information from the LTFV investigation in two ways: plaintiff could have (1) made a timely request that Commerce reassess the LTFV determination; or (2) taken the initiative of resubmitting the record in the original investigation to ensure judicial consideration of the LTFV determination. The Court questions the wisdom of making these procedures available on a comprehensive basis because they

may be misused, effectively divesting the review proceedings of any substantive content. In this regard, plaintiff's comment is instructive: a request for a review is merely "a formality that must be complied with in order to obtain liquidation in accordance with the results of the appeal from the underlying LTFV investigation.... To require that Tai Yang develop a full record in the [administrative] review in order to obtain a decision under merits in the appeal from the underlying LTFV determination is nonsensical." *Plaintiff's Brief* at 20; *see Plaintiff's Reply Brief* at 5.